**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARY RHINES,** | : | |
| | : | **Civil No. 3:12-CV-1601** |
| **Plaintiff** | : | |
| | : | **(Judge Nealon)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION AND ORDER**

## I.    Statement of Facts and of the Case

The *pro se* plaintiff, Gary Rhines, is a federal prisoner who was housed at the United States Penitentiary, Canaan.  Rhines has sued the United States alleging that on June 25, 2011, the prison served inmates chicken fajitas.  (Doc. 1.)  According to the plaintiff, the chicken was bad, and was tainted with salmonella bacteria.  (Id.)  Consequently, the plaintiff alleges that he contracted food poisoning, and suffered excruciating pain and symptoms which included headaches, diarrhea, abdominal pains, nausea, chills, vomiting, inability to eat and profuse sweating.  (Id.)  Alleging negligence on the part of the prison in the preparation and service of this food, the plaintiff seeks damages from the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2675, *et seq*.

This case now comes before us for resolution of a discovery dispute. Specifically, the plaintiff has moved to compel production of additional documents from the defendants relating to three categories of material: (1) settlements of other claims brought by other inmates and prison staff affected by this salmonella outbreak; (2) medical records relating to other individuals affected by this salmonella outbreak; and (3) documents detailing the sources and causes of this salmonella food poisoning. (Doc. 54.) The defendant has opposed these requests, arguing that the plaintiff is not entitled to access to third party claim settlements; asserting that the medical records of other inmates are personal and confidential; and insisting that records relating generally to this salmonella outbreak are irrelevant because it does not intend to contest that the outbreak occurred. (Doc. 56.)

For the reasons set forth below, this motion to compel will be granted, in part, and denied, in part.

## II.   **Discussion**

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

(a) Motion for an Order Compelling Disclosure or Discovery

(1) In General./ On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> (1) Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

Fed. R. Civ. P. 26(b)(1)

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment.  Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court."  DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974).  Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court.  Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  Thus, a

court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or

defense."  Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues.  Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information"  a concept which is defined in the following terms:  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information.  Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001).  Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

Furthermore, in a prison setting, inmate requests for certain information can raise security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a governmental needs to confidentiality

of certain data but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

Finally, when presented with requests for the disclosure of documents relating to the settlement of claims certain additional principles guide the exercise of this discretion.  In this specific factual context, there is an "inherent tension between Fed.R.Evid. 408, which prohibits the use of settlement discussions to prove liability, and Rule 26, which permits liberal discovery."  Ford Motor Co. v. Edgewood Properties, Inc., 257 F.R.D. 418, 423 (D.N.J.2009).  Thus, while the "Third Circuit does not recognize a settlement privilege, ... Parties seeking to discover such [settlement] communications must make a heightened, more particularized showing of relevance.  See Lesal Interiors v. Resolution Trust Corp., 153 F.R.D. 552

(D.N.J.1994)."  Ford Motor Co. v. Edgewood Properties, Inc., 257 F.R.D. 418, 423 (D.N.J.2009).   Accordingly, only a "particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement."  Morse/Diesel, Inc. v. Fidelity & Dep. Co., 122 F.R.D. 447, 450 (S.D.N.Y.1988)  (quoting  Bottaro  v.  Hatton  Assoc.,  96  F.R.D.  158,  159 (E.D.N.Y.1982)); Morse/Diesel, Inc. v. Trinity Indus., 142 F.R.D. 80 (S.D.N.Y.1992); Doe v. Methacton Sch. Dist., 164 F.R.D. 175, 176 (E.D.Pa.1995) will justify the release of these settlement documents.  See Chappelle v. Varano, 4:11-CV-304, 2012 WL 3241503 (M.D. Pa. Aug. 7, 2012).

### B.   Rhines' Motion to Compel Will be Granted, in Part, and Denied, in Part

Applying this guiding principles, Rhines' motion to compel will be denied, in part, and granted in part as follows:

### 1.   Rhines' Request for Access to Medical Records of Other Inmates is Denied

At the outset, we conclude that Rhines' request for access to medical records of other inmates should be denied.  These third parties have a legitimate interest in maintaining the privacy of their medical information, and the Bureau of Prisons has an affirmative obligation to ensure the confidentiality of inmate patient records.  Since the release of these medical files to inmate Rhines s would potentially violate the privacy rights of the third party named in the reports,  in the exercise of our discretion we will

–7–

deny this request.  See Lyons v. Beard, 3:07-CV-444, 2011 WL 4368370 (M.D. Pa.

Sept. 19, 2011) (denying access to third-party complaints on privacy grounds); Mincy

v. Chmielewski, No. 05–292, 2006 WL 3042968 (M.D.Pa. Oct.25, 2006) (denying

access to third-party complaints on privacy grounds).

## 2.   Rhines is not Entitled to Examine Other Third Party Settlement

We also agree that Rhines may not examine and review other third party

settlement agreements arising out of other claims and litigation relating to this

salmonella outbreak.  As we have noted, "Parties seeking to discover such [settlement]

communications must make a heightened, more particularized showing of relevance.

See Lesal Interiors v. Resolution Trust Corp., 153 F.R.D. 552 (D.N.J.1994)."  Ford

Motor Co. v. Edgewood Properties, Inc., 257 F.R.D. 418, 423 (D.N.J.2009).

Accordingly, only a " ' "particularized showing of a likelihood that admissible

evidence will be generated by the dissemination of the terms of a settlement

agreement" ' Morse/Diesel, Inc. v. Fidelity & Dep. Co., 122 F.R.D. 447, 450

(S.D.N.Y.1988) (quoting Bottaro v. Hatton Assoc., 96 F.R.D. 158, 159

(E.D.N.Y.1982)); Morse/Diesel, Inc. v. Trinity Indus., 142 F.R.D. 80 (S.D.N.Y.1992),"

Doe v. Methacton Sch. Dist., 164 F.R.D. 175, 176 (E.D.Pa.1995) will justify the

release of these settlement documents.  See Chappelle v. Varano, 4:11-CV-304, 2012

WL 3241503 (M.D. Pa. Aug. 7, 2012).

Here, Rhines has not made such a particularized showing of relevance, and there is substantial reason to believe that the terms of these various settlement agreements would not be useful ro relevant to Rhines' claims  since settlements with other prison staff and inmates would need to take into account a host of legal and factual variables unique to each claimant, variables which could affect the outcome of each settlement in ways that would make comparisons of these outcomes not only irrelevant, but potentially misleading.   Therefore, we will decline the invitation to allow Rhines wholesale access to these various settlement agreements.

**3.**   **The Defendant Should Supplement or Clarify its Response to Rhines' Discovery Requests Which Seek Information Regarding the Causes, Source and Overall Scope of the Salmonella Outbreak**

Finally, in his motion to compel, Rhines seeks additional responses to requests for production of information relating to the scope, cause and sources of the salmonella outbreak at U.S.P. Canaan.   We note that the defendant has responded to these requests, providing some requested information and alleging that additional records relating generally to this salmonella outbreak are irrelevant because it does not intend to contest that the outbreak occurred.   (Doc. 56.)   While we acknowledge the defendant's efforts, we believe that some additional clarity may be helpful here.

In considering the relevance of these discovery demands, we are mindful of the fact that this is a negligence action brought against the United States under the Federal

Tort Claims Act, 28 U.S.C. § 2675, *et seq*, which governs all claims against the United States "for money damages for injury or loss of personal property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2675(a). Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances," id. at § 2674, and the "'extent of the United States' liability under the FTCA is generally determined by reference to state law.'" In re Orthopedic Bone Screw Product Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001) (quoting Molzof v. United States, 502 U.S. 301, 305 (1992)).

Thus, a federal district court, in considering an FTCA action, must apply the law of the state in which the alleged tortious conduct occurred. See 28 U.S.C. § 1346(b)(1991); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987). Construing this case under settled Pennsylvania tort law, in order to establish a cause of action for negligence, a plaintiff must prove the following elements: (1) a duty or obligation to the plaintiff recognized by law; (2) a breach of that duty to the plaintiff; (3) a causal connection between the conduct and plaintiff's resulting injury; and (4) actual damages suffered by the plaintiff. Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. Ct. 1994).

In our view, the responses which the defendant has provided to Rhines appear to endeavor to address his needs for information relating to these elements of an FTCA

claim, albeit in a fashion which could warrant some further clarification.  As a general matter, in cases raising out of this episode of alleged food poisoning at U.S.P. Canaan, we believe that it would be helpful if the United States as a defendant in an FTCA claim took the following steps to supplement its discovery responses:

First, the defendant should unambiguously state whether it acknowledges that, in this salmonella outbreak, the threshold elements of a negligence claim are met as a general matter, a breach of a duty or obligation owed generally to inmates to serve healthy, and non-contaminated food.  If the defendant makes this concession then, in our view, wide-ranging discovery regarding the causes and sources of the salmonella may be unnecessary since the defendant acknowledges as a general matter an obligation to refrain from provided salmonella infected foodstuffs to inmates.  With this element of an FTCA negligence claim satisfied, the remaining issues in this litigation can then be presented to the Court in a much more focused fashion, with the defendant providing each inmate with access to his own medical records, records which would either confirm, or rebut, any claim that the particular inmate suffered any adverse consequences as a result of this salmonella outbreak, and would provide medical information regarding the severity of the plaintiff's injuries and damages.

While we believe that the defendant's initial responses may be attempting to advise Rhines that the government acknowledges as a general matter a breach of a duty or obligation owed generally to inmates to serve  healthy, and non-contaminated food,

while reserving the right to contest that the plaintiff was injured, the defendant's response is not entirely clear in this regard. Accordingly, in order to provide Rhines with this type of focused and relevant discovery, we will direct the defendant within the next 30 days to notify the plaintiff, whether it acknowledges that, in this salmonella outbreak, the threshold elements of a negligence claim are met, a breach of a duty or obligation owed generally to inmates to serve healthy, and non-contaminated food. If the defendant provides this acknowledgment to Rhines, then it should also disclose to Rhines his own medical records, records which would either confirm, or rebut any claim that the particular inmate suffered any adverse consequences as a result of this salmonella outbreak, and would provide medical information regarding the severity of the plaintiffs injuries and damages.[1] In the alternative, the defendant should be prepared to disclose those records regarding the nature, causes and sources of the salmonella outbreak as may be relevant to the threshold elements of Rhines' claims whether a breach of a duty or obligation owed generally to inmates in terms of service of healthy, and non-contaminated food has occurred.

An appropriate order will follow.

## III.  Order

---

[1] We note that it appears from the defendant's response that this may have already occurred, in that Rhines has been provided access to his own medical records.

For the foregoing reasons, IT IS ORDERED that, the plaintiff's motion to compel is DENIED, in part, and GRANTED, in part, as follows:

1.   The motion is DENIED to the extent that Rhines seeks medical records or settlement records of other third parties.

2.   To the extent that Rhines requests information regarding the nature, causes and sources of the salmonella outbreak, the defendant is ORDERED to clarify its prior responses as follows:  within the next 30 days to notify the plaintiff, whether it acknowledges that, in this salmonella outbreak, the threshold elements of a negligence claim are met, a breach of a duty or obligation owed generally to inmates in terms of service of healthy, and non-contaminated food.  If the defendant provides this acknowledgment to Rhines, then it should also disclose to Rhines his own medical records, records which would either confirm, or rebut any claim that the particular inmate suffered any adverse consequences as a result of this salmonella outbreak, and would provide medical information regarding the severity of the plaintiffs injuries and damages.  In the alternative, the defendant should be prepared to disclose those records regarding the nature, causes and sources of the salmonella outbreak as may be relevant to the threshold elements of Rhines' claims

whether a breach of a duty or obligation owed generally to inmates in

terms of service of healthy, and non-contaminated food  has occurred.

So ordered this 4th day of August, 2014.

**_S/Martin C.  Carlson_**
Martin C. Carlson
United States Magistrate Judge